# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT NORSOPH, | Case No.: 2:13-cv-00580-APG-EJY |
| Plaintiff | **Order Granting Motion for Judgment on the Pleadings** |
| v. | |
| RIVERSIDE RESORT AND CASINO, INC., et al., | [ECF No. 88] |
| Defendants | |
| KEVIN CARTER, et al., | |
| Plaintiffs | Case No.: 2:16-cv-02697-APG-DJA |
| v. | **Order Granting in Part Motion for Judgment on the Pleadings and Granting Leave to Amend** |
| WYNN LAS VEGAS, LLC, | |
| Defendant | [ECF No. 24] |
| SHAWN JAFFEE, et al., | |
| Plaintiffs | Case No.: 2:19-cv-00644-APG-NJK |
| v. | **Order Granting in Part Motion for Judgment on the Pleadings and Granting Leave to Amend** |
| WYNN LAS VEGAS LLC, | |
| Defendant | [ECF No. 21] |

The plaintiffs in each of these cases have filed claims on behalf of themselves and all others similarly situated under the Fair Labor Standards Act (FLSA) based on tip pooling regulations the Department of Labor (DOL) issued in 2011 (the "2011 regulations"). The

defendants in each case have moved for judgment on the pleadings or to dismiss. The parties in all three cases dispute whether the plaintiffs can bring a claim under the 2011 regulations following DOL's position that it lacked statutory authority to issue those regulations and Congress's subsequent amendment of the FLSA in March 2018. The *Carter* and *Jaffee* cases also raise other issues, such as whether those plaintiffs have claims post-dating the March 2018 statutory amendments and whether the *Jaffee* plaintiffs were required to exhaust remedies under their collective bargaining agreement (CBA).

I consolidated the pending motions for hearing. As set forth more fully below, I grant the motion for judgment on the pleadings in the *Norsoph* case without leave to amend because amendment would be futile. I grant the motion for judgment on the pleadings in the *Carter* case and grant in part the motion to dismiss in the *Jaffee* case, but I grant the plaintiffs in those cases leave to amend because amendment by them would not be futile.

# I. BACKGROUND

## A. Factual Background

Plaintiff Robert Norsoph alleges that while he was a dealer at the Riverside Resort and Casino, he was required to pool tips with employees who do not customarily receive tips, in violation of DOL's 2011 regulations. Norsoph recently moved to amend his complaint to add post-2018 amendment claims, but Magistrate Judge Youchah denied the motion because Norsoph stopped working at Riverside in 2012 and thus he would not have a 2018 claim. *Norsoph*, ECF Nos. 110, 113.[1]

Plaintiffs Kevin Carter, Michael Sacco, and Blake Reck allege that they are bartenders or servers at the Wynn Hotel Casino who are required to pool tips with employees who do not

---

[1] For ease of citation, I will refer to each case by its name and the docket number for that case.

customarily receive tips, including management, in violation of DOL's 2011 regulations. They also assert state law claims for conversion and unjust enrichment. Plaintiff Shawn Jaffee alleges he is a bartender and plaintiff Derek Kritz alleges he is a server at the Wynn who are required to share tips with non-customarily tipped employees, including management, in violation of the 2011 regulations. They also assert state law claims for conversion and unjust enrichment.

**B. Legal Background**

Every employer subject to the FLSA must pay a minimum wage. 29 U.S.C. § 206(a). In 1942, the Supreme Court ruled that tips ordinarily belong to the tipped employee, unless a contrary arrangement is reached with the employer. *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397-98 (1942) (holding that tips could be included to meet the minimum wage requirement where the employer notified employees that their tips would be considered part of their wages and the employees continued to work there under the new arrangement).

In 1966, Congress amended the FLSA to allow employers to meet the minimum wage requirement through the use of a tip credit. During the time relevant to this dispute until amended in March 2018, 29 U.S.C. § 203(m) of the FLSA provided:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>> (1) the cash wage paid such employee which for purposes of such determination shall not be less than the cash wage required to be paid such an employee [$2.13]; and
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title [meaning the minimum wage].
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall

not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Thus, an employer who took a tip credit was required "to (1) give notice to its employees, and (2) allow its employees to retain all the tips they receive, unless such employees participate in a valid tip pool." *Oregon Rest. & Lodging Ass'n v. Perez (ORLA)*, 816 F.3d 1080, 1082 (9th Cir. 2016). A tip pool was valid if it was "comprised exclusively of employees who are 'customarily and regularly' tipped." *Id.* (quoting § 203(m)).

In 2010, the Ninth Circuit held that where an employer does not take a tip credit under § 203(m) and instead pays its employees the federal minimum wage in cash regardless of tips, the employer could require employees to participate in tip pools that include employees who are not customarily tipped, such as kitchen staff. *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010). The *Cumbie* court held this did not violate the FLSA because § 203(m) did not apply to employers who did not take a tip credit so the FLSA does not prohibit the practice and, under *Williams*, such arrangements are otherwise presumptively valid. *Id.* at 580-81.

DOL issued regulations in 2011 that sought to overrule *Cumbie* by extending the tip pooling rules to all employers, including those who did not take a tip credit. *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18832-01, 2011 WL 1231289 (April 5, 2011). Specifically, DOL changed 29 C.F.R. § 531.52 to state that tips are the employee's property regardless of whether the employer takes a tip credit, and the employer is prohibited from using tips except as a credit against its minimum wage obligations or in furtherance of a valid tip pool. Thus, the new regulation prohibited tip pooling that violates § 203(m) (such as by pooling with employees who are not customarily tipped) regardless of whether the employer claimed a tip credit under that section.

4

Some tipped employees thereafter sued their employers under the 2011 regulations, including two cases in the Ninth Circuit: *Oregon Restaurant and Lodging Association (ORLA)* and *Cesarz v Wynn Las Vegas, LLC*. In both cases, the employers required customarily tipped employees to share tips with employees who are not customarily tipped, such as kitchen staff and casino floor supervisors. *ORLA*, 816 F.3d at 1082. Neither employer took a tip credit. *Id.* The employers challenged the 2011 regulations, arguing DOL lacked a statutory basis to impose the tip pooling rules in § 203(m) to an employer who did not take the tip credit. The district courts in both cases agreed with the employers. *Id.* at 1083.

In consolidated appeals of *ORLA* and *Cesarz*, the Ninth Circuit applied *Chevron*[2] deference and upheld the 2011 regulations. The *ORLA* majority held that *Cumbie* was based on the FLSA being silent on the issue of an employer who did not take a tip credit, and that DOL, as the agency charged with enforcing the statute, could fill the statutory gap with its regulations. *Id.* at 1088. The majority also held that the 2011 regulations were a reasonable interpretation of § 203(m). *Id.* at 1089-90.

Judge N.R. Smith dissented, arguing that these cases were just like *Cumbie* and that § 203(m) "only imposed a condition on employers who take a tip credit, rather than a blanket requirement on all employers regardless of whether they take a tip credit." *Id.* at 1091-92 (emphasis omitted). He argued that because the statute was clear (and *Cumbie* said it was clear), the majority should not have deferred to DOL's interpretation. *Id.* at 1092-93.[3]

---

[2] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[3] Judge Smith voted to grant the petition for panel rehearing and rehearing en banc. 843 F.3d 355 (9th Cir. 2016). However, neither petition received a majority of votes, so they were denied. *Id.* Ten judges, including Judge Smith, dissented from the denial. *Id.*

The employers in *ORLA* and *Cesarz* appealed to the Supreme Court in January 2017. *Wynn Las Vegas, LLC v Cesarz*, No. 16-163, Pet. for Writ of Certiorari, 2016 WL 11266214 (Aug. 1, 2016); *Nat'l Restaurant Ass'n v. U.S. Dep't of Labor*, No. 16-920, Pet. for Writ of Certiorari, 2017 WL 360483 (Jan. 19, 2017).

In June 2017, the Tenth Circuit sided with the dissent in *ORLA*. *Marlow v. New Food Guy, Inc.*, 861 F.3d 1157 (10th Cir. 2017). The Tenth Circuit concluded that "§ 203(m)'s 'silence' about employers who decline the tip credit is no 'gap' for an agency to fill. Instead, the text limits the tip restrictions in § 203(m) to those employers who take the tip credit, leaving DOL without authority to regulate to the contrary." *Id*. at 1164.

In response to the *Marlow* decision, the *ORLA* dissent, and DOL's own concerns about the 2011 regulations, DOL adopted a nonenforcement policy in December 2017, stating it would not enforce the 2011 regulations where the employer paid a direct cash wage of at least the minimum wage. *Tip Regulations Under the Fair Labor Standards Act*, 82 Fed. Reg. 57,395, 57,399 (Dec. 5, 2017). It also issued a notice of proposed rulemaking that sought to rescind the 2011 regulations to the extent they applied to employers who did not take a tip credit. *Id.* at 57,395-96. In March 2018, the Secretary of Labor testified before Congress that he found the *Marlow* decision's reasoning persuasive that DOL "lacked authority for its 2011 regulations." *Nat'l Restaurant Ass'n v. Dep't of Labor*, No. 16-920, Br. for Respondents, 2018 WL 2357725, at *11 (May 22, 2018).[4]

On March 23, 2018, Congress enacted the Consolidated Appropriations Act, 2018 (CAA), which revised § 203(m). The CAA added a new paragraph to § 203(m) stating that "[a]n

---

[4] A video of the hearing at which the Secretary made these comments can be viewed at https://www.youtube.com/watch?v=6Weo1vfNM1k.

employer may not keep tips received by its employees for any purposes, including allowing

managers or supervisors to keep any portion of employees' tips, regardless of whether or not the

employer takes a tip credit." Consolidated Appropriations Act, Pub. L. 115-141, 132 Stat. 348,

Title XII, Sec. 1201(a) (March 23, 2018).  It also added a provision allowing employees to sue

the employer for any tips unlawfully kept plus an equal amount as liquidated damages. *Id.*,

Section 1201(b).  These changes are codified at 29 U.S.C. § 203(m)(2)(A) (which is the former §

203(m) unchanged); § 203(m)(2)(B) (which now states that an employer cannot keep tips

regardless of whether it takes a tip credit); and § 216(b) (which creates a private right of action

against an employer that unlawfully retains tips in violation of § 203(m)(2)(B)).

Finally, Section 1201(c) of the CAA, entitled "EFFECT ON REGULATIONS," stated:

> The portions of the final rule promulgated by the Department of Labor entitled
> "Updating Regulations Issued Under the Fair Labor Standards Act" (76 Fed. Reg.
> 18832 (April 5, 2011)) that revised sections 531.52, 531.54, and 531.59 of title
> 29, Code of Federal Regulations (76 Fed. Reg. 18854–18856) and that are not
> addressed by section 3(m) of the Fair Labor Standards Act of 1938 (29 U.S.C.
> 203(m)) (as such section was in effect on April 5, 2011), shall have no further
> force or effect until any future action taken by the Administrator of the Wage and
> Hour Division of the Department of Labor.

Consolidated Appropriations Act, Pub. L. 115-141, 132 Stat. 348, Title XII, Sec. 1201(c) (March

23, 2018).

In April 2018, DOL issued a Field Assistance Bulletin announcing that for the period

before March 2018, where the employee was paid the full FLSA minimum wage, DOL would

not pursue a violation. Field Assistance Bulletin No. 2018-3.[5]  In May 2018, DOL filed a brief in

response to the petition for certiorari in *ORLA* in which it described these developments. *Nat'l*

*Restaurant Ass'n v. Dep't of Labor*, No. 16-920, Br. for Respondents, 2018 WL 2357725, at *11-

---

[5] Available at https://www.dol.gov/agencies/whd/field-assistance-bulletins/2018-3.

12 (May 22, 2018). DOL also stated that it had "reconsidered the validity" of the 2011 regulations and noted that the Secretary had concluded DOL lacked statutory authority to issue them. *Id.* at \*23. Although DOL asked the Supreme Court to vacate the *ORLA* decision, the Supreme Court instead denied the certiorari petition in *ORLA* on June 25, 2018. *Nat'l Restaurant Ass'n v. Dep't of Labor*, 138 S. Ct. 2697 (June 25, 2018).

The *ORLA* and *Cesarz* cases were thus remanded to their respective district courts, *ORLA* to Oregon and *Cesarz* to Nevada. On remand, the *ORLA* plaintiffs dismissed their case. In *Cesarz*, the district court ruled that the CAA's language that the 2011 regulations shall have "no further force or effect" means that the plaintiffs could not obtain a money judgment against the defendants for allegedly violating the 2011 regulations because that would give force or effect to those regulations. *Cesarz v. Wynn Las Vegas LLC*, No. 2:13-cv-00109-RCJ-CWH, 2019 WL 237389, at \*1 (D. Nev. Jan. 16, 2019). The court also noted that the *ORLA* decision was based on deference to DOL's regulations, but DOL had since disclaimed that it had statutory authority to issue those regulations, so the basis of the *ORLA* decision has been undermined. *Id.* at \*2. That case is again on appeal to the Ninth Circuit.

The parties in these cases dispute whether, given this legal and factual landscape, the plaintiffs can assert claims for minimum wage violations under the FLSA and the 2011 regulations. They also dispute whether the *Carter* and *Jaffee* plaintiffs have alleged post-2018 amendment claims and whether the *Jaffee* plaintiffs should have exhausted remedies under their CBA.

## II.  LEGAL STANDARDS

"Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Knappenberger v.*

*City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009) (quotation omitted).  In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  A plaintiff must assert sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Generally, a plaintiff may amend its complaint "once as a matter of course within . . . 21 days after serving it," or within 21 days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1).  Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").  I consider five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether plaintiff has previously amended the complaint. *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  Whether to grant leave to amend lies within my discretion. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

/ / / /

/ / / /

/ / / /

# III.  ANALYSIS

## A.  Claims Based on the 2011 Regulations

In all three cases, the plaintiffs allege the defendants violated the FLSA, as interpreted in the 2011 regulations, by requiring employees to pool tips with non-customarily tipped employees even though the employers did not claim a tip credit.  The defendants move to dismiss or for judgment on the pleadings, arguing that (1) the CAA's "no further force or effect" language invalidated the 2011 regulations; (2) *ORLA*'s reasoning has been undermined by DOL's new position on the invalidity of the 2011 regulations; (3) the 2011 regulations did not take effect in the Ninth Circuit until the mandate was issued *ORLA*, which was after the 2018 amendments; and (4) there was no private right of action for the alleged tip violations prior to the 2018 amendments.  The plaintiffs argue that the CAA did not retroactively abolish their claims under the 2011 regulations and that I am bound to follow *ORLA*.

### 1. *"No Further Force or Effect"*

The defendants argue the CAA's "no further force or effect" language means the 2011 regulations cannot be the basis of the plaintiffs' claims because that would give them force or effect.  The plaintiffs respond that the Ninth Circuit's decision in *ORLA* upholding the 2011 regulations is binding on this court.  They contend that until that decision is overruled by the Ninth Circuit en banc or the Supreme Court, I must follow it.  They also argue the 2018 amendments did not retroactively extinguish employees' claims under the 2011 regulations because Congress did not unambiguously state that it intended the 2018 amendments to have retroactive effect.  They note that the 2018 amendments state that the 2011 regulations shall have no "further" force or effect, which suggests only prospective application.

Statutory interpretation aims to determine Congress's intent in enacting the statute at issue. *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015). I look first to the statute's plain language, which I determine by reference to "not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *United States v. Lillard*, 935 F.3d 827, 833 (9th Cir. 2019) (quotation omitted). "If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." *Id.* at 833-34 (quotation omitted). But if the statutory language lacks a plain meaning, I "may employ other tools, such as legislative history, to construe the meaning of ambiguous terms." *Id.* (quotation omitted). "Thus, [I] examine the statute as a whole, including its purpose and various provisions." *ASARCO, LLC*, 792 F.3d at 1210 (quotation omitted). "A statute is ambiguous if it is susceptible to more than one reasonable interpretation." *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 556 (9th Cir. 2016) (quotation omitted).

### a. Plain Language

Looking first to the statute's plain language, the word "further" suggests prospective application. Additionally, although the defendants contend there is some difference between the words "force" and "effect," the phrase "force or effect" is a "doublet that has become part of the legal idiom" where "[a]mplification" is achieved through the use of synonyms, although "[e]ither synonym would suffice just as well as the doublet." Garner's Dictionary of Legal Usage 294, 370 (Third ed. 2011); *see also* Black's Law Dictionary 788 (11th ed. 2019) (stating the term "force and effect" is "now generally regarded as a redundant legalism"). The most natural reading of the plain statutory language is that the 2011 regulations no longer govern employers'

////

////

conduct after the effective date of the 2018 amendments, not that the 2011 regulations—and any

claims that existed under those regulations—are retroactively abolished.[6]

      The "no further force or effect" language is, at best for defendants, ambiguous. It could

mean that as of the date of enactment of the 2018 amendments, the rules of the road on tipping

are governed by the 2018 amendments, but that Congress did not intend to retroactively abolish

claims that relied on the 2011 regulations. Alternatively, it could mean that the 2011 regulations

cease to exist for any purpose, including to form the basis of claims already pending in court. As

discussed more fully below, the legislative history is also ambiguous but tends to support, if

anything, the conclusion that Congress did not intend to retroactively abolish the 2011

regulations.

/ / / /

---

[6] The defendants point to the Rules Enabling Act, 28 U.S.C. § 2072, as an example of Congress using similar language, and they contend this shows Congress intended a retroactive effect. I disagree. Section 2072(a) grants the Supreme Court the power to prescribe rules of practice in federal courts. Section 2072(b) provides, however, that those rules "shall not abridge, enlarge or modify any substantive right." Section 2072(b) also states that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Section 2072 is not comparable to the present situation because it expressly states that the rules are procedural only and cannot abridge substantive rights. By then stating that all conflicting laws shall have no further force or effect, Congress was substituting old procedural rules for new ones. *See* Judicial Improvements and Access to Justice Act, H.R. Rep. 100-889, 27-28, 1988 U.S.C.C.A.N. 5982, 5988 (Aug. 26, 1988) (stating that the "no further force or effect" clause "sought to ensure the replacement of a large number of procedural statutes that, it was believed, would have been difficult to identify before those rules were promulgated."). Congress was not retroactively abolishing substantive rights.

      Moreover, even where procedure was involved, the rules recognized the potential unfairness that may result from retroactive application of the new rules to actions already taken in pending cases. *See* Fed. R. Civ. P. 86(a)(2)(B) (stating the rules and amendments govern proceedings that are pending when the new rule or amendment becomes effective "unless . . . the court determines that applying them in a particular action would be infeasible or work an injustice"). Thus, I cannot infer from the Rules Enabling Act (first enacted in 1934 to address procedural changes) that Congress in 2018 meant to retroactively abolish substantive rights under the 2011 regulations without more express language identifying that intent.

12

b.  Ambiguity and Retroactivity

To the extent the "no further force or effect" language is ambiguous, then that language does not clearly express Congress's intent to apply the 2018 amendments retroactively.  There is a presumption against retroactive legislation.  *Talaie v. Wells Fargo Bank, NA*, 808 F.3d 410, 411-12 (9th Cir. 2015).  "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 264 (1994) (quotation omitted).  Consequently, "a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication." *United States v. St. Louis, S.F. & T.R. Co.*, 270 U.S. 1, 3 (1926).

To determine whether a statute has retroactive effect, I "first look to 'whether Congress has expressly prescribed the statute's proper reach.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Landgraf*, 511 U.S. at 280).  "The statutory language must be so clear that it [can] sustain only one interpretation." *United States v. Reynard*, 473 F.3d 1008, 1014 (9th Cir. 2007) (quotation omitted).  In the absence of express temporal statutory language, I must "try to draw a comparably firm conclusion about the temporal reach specifically intended by applying [the] normal rules of construction." *Fernandez-Vargas*, 548 U.S. at 37 (quotation omitted).

If I cannot determine congressional intent for the statute to apply retroactively, then I ask whether applying the statute retroactively would affect "substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment." *Id.* at 37 (quotation omitted).  If it would, then I "apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that it intended such a result." *Id.* at 37-38 (quotation omitted).  "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating

the statute's enactment." *Landgraf*, 511 U.S. at 269. "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269-70.

As discussed above, the statutory language does not expressly state an intent to apply the amendments retroactively. If Congress intended the 2018 amendments to retroactively extinguish the 2011 regulations, it could have chosen clear retroactive temporal language, such as stating the 2011 regulations were void ab initio or that the regulations do not apply to conduct pre-dating the amendments. But it did not do so.

The defendants contend that even if the statutory language is not an express directive, Congress intended retroactive effect by necessary implication because the 2018 amendments were enacted after the Secretary of Labor testified to Congress that he believed DOL had no statutory authority to enact the 2011 regulations. Congress then amended the statute to add provisions that would give DOL statutory authority to enact regulations applicable to an employer who does not take a tip credit. Additionally, Congress stated that those portions of the 2011 regulations that were not addressed by § 203(m) as it existed in 2011 shall have no further force or effect. The defendants suggest this shows Congress agreed there was no statutory basis for the 2011 regulations for employers who do not take a tip credit because § 203(m) did not address that issue in 2011.

I do not find this analysis persuasive to show congressional intent by necessary implication. First, it is not apparent that Congress agreed with the Secretary that he lacked statutory authority to issue the 2011 regulations. The statutory language referring to those portions of the 2011 regulation "that are not addressed by section 3(m) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(m)) (as such section was in effect on April 5, 2011)" is

ambiguous.  It could be referring to the Secretary's position and the *Marlow* decision that the original § 203(m) did not give DOL a statutory basis to issue the 2011 regulations because the original statute did not address employers who did not take a tip credit.  But it also could be read to mean that Congress agreed with *ORLA* that the statute was silent on the issue of tip pooling by employers who did not take a tip credit, and DOL could fill the statutory gap.  Or, as discussed below, Congress could have used this language to describe those portions of the 2011 regulations that would no longer be in effect.

The hearing at which the Secretary stated his agreement with *Marlow* is instructive. Several congressional representatives pressed the Secretary on his position and they expressed support for the 2011 regulations.[7]  Congress was faced with the Secretary proposing to rescind the 2011 regulations and telling them that he thought he lacked statutory authority to act.  He suggested the simple solution that Congress add a statutory basis for him to act,[8] and Congress did so.[9]  That does not necessarily support the conclusion that Congress agreed with the Secretary that he lacked that authority before the amendments.  Rather, Congress put that argument to rest.[10]

---

[7] See the video of the hearing beginning at approximately 42:09 and again at approximately 1:10:30.

[8] See the video of the hearing at approximately 1:14:10 where the Secretary offers "a real simple solution."

[9] Indeed, Congress apparently agreed with the policy behind DOL's 2011 regulations that restrictions on tip pooling should apply to employers who do not take a tip credit because it enacted § 203(m)(2)(B), which expressly prohibits tip pooling with managers or supervisors regardless of whether the employer takes a tip credit.

[10] For this same reason, I reject the defendants' contention that the 2018 amendments show that the FLSA did not previously apply to employers who did not take a tip credit because if the FLSA already prohibited this conduct, the 2018 amendment would be superfluous.  Congress may have disagreed but decided to act to respond to the Secretary's stated position and decisions like *Marlow*.

Tellingly, at that same hearing there was no discussion about what should happen to pending lawsuits that were based on the 2011 regulations. It is doubtful that Congress contemplated this issue and intended to extinguish those claims when there was no discussion on the point. There likely would have been substantial dispute over that result given the comments by several of the congressional representatives during that hearing that supported the 2011 regulations and expressed concern over the Secretary's position that he lacked statutory authority for the regulations, and given that the 2018 amendments were generally consistent with the 2011 regulations.

Clear congressional intent is required to overcome the presumption against retroactive application. *I.N.S. v. St. Cyr*, 533 U.S. 289, 316 (2001) ("A statute may not be applied retroactively, however, absent a clear indication from Congress that it intended such a result."). "Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* (quotation omitted). The "effect on regulations" section of the CAA does not suffice as a clear indication that Congress made that determination here, either expressly or by necessary implication.

As for the defendants' argument that the "no further force or effect" language would be superfluous because the 2011 regulations would already be invalid as conflicting with the 2018 amendments, that is not necessarily so. Many of the 2011 regulations are consistent with the 2018 amendments. Congress could have decided that rather than create confusion about what

/ / / /

/ / / /

/ / / /

16

1  parts of the regulations are still valid, it would describe those portions that are no longer in effect

2  until DOL implements new regulations.[11]

3        I cannot determine that Congress decided the statute should apply retroactively.  So I next

4  ask whether applying the statute retroactively would affect substantive rights, liabilities, or duties

5  on the basis of conduct arising before the statute's enactment.  It would.  Prior to the 2018

6  amendments, tip pooling with non-customarily tipped employees was illegal under the 2011

7  regulations even for employers who did not take a tip credit.  If the 2018 amendments are applied

8  retroactively, then the conduct that was illegal would be legal, and the plaintiffs' claims would

9  be retroactively abolished. *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1187-88 (9th Cir. 2016)

10  (holding that an amendment "would have retroactive effect because it would extinguish

11  Defendants' liability under [the Interstate Land Sales Full Disclosure Act], and by extension the

12  [Unfair Competition Law], thus depriving Plaintiffs of a pre-existing cause of action").

13  Consequently, I apply the presumption against retroactivity by construing the statute as having

14  prospective application only.  As a result, the 2011 regulations remain valid under *ORLA*[12] from

15  the date of their enactment until the 2018 amendments.

16

---

17  [11] Congress retained all of the language in the original § 203(m) unaltered, so it likely wanted to

18  preserve DOL's regulations as they relate to the original § 203(m) (now § 203(m)(2)(A)).
   Additionally, the 2011 amendments did more than revise the specific sections of the regulations

19  central to the parties' dispute here.  For example, the 2011 regulations changed § 531.54 to
   address maximum contribution percentages on valid mandatory tip pools and made changes to

20  the formula for computing the tip credit in § 531.59. *Updating Regulations Issued Under the
   Fair Labor Standards Act*, 76 Fed. Reg. 18832-01 at 18835, 18845 (April 5, 2011).

21  Consequently, the 2018 amendments' reference to portions of the regulations that are "not
   addressed by § 203(m) of" the FLSA "as such section was in effect on April 5, 2011" also could

22  be read as an attempt to describe those portions of the 2011 regulations that have no future
   application.

23  [12] The defendants argue that I am not bound by *ORLA* because an intervening act of Congress
   can nullify circuit precedent.  But that is the very question currently before the court:  did the
   2018 amendments undo *ORLA* by clearly stating the 2011 regulations are void ab initio or

### c. Clarifying Versus Substantive Amendment

The defendants argue I should not even engage in this retroactivity analysis because this section of the 2018 amendments clarified, rather than changed the substance of, existing law. The defendants contend this was a clarifying amendment because Congress was addressing the circuit split between *ORLA* and *Marlow*.

"Congress may amend a statute to establish new law, but it also may enact an amendment to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases." *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (quotation omitted). "[C]larifying legislation is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment." *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000). If the statute "merely clarifies what [the prior statute] was originally intended to mean . . . it has no retroactive effect that might be called into constitutional question" under a retroactivity analysis. *Id.* (quotation omitted).

To determine whether a statute is clarifying or changing a law, I examine how Congress described what it was doing. *Id.* at 690. I also look to whether there was a circuit split on the statute's meaning because an "amendment in the face of an ambiguous statute or a dispute among the courts as to its meaning indicates that Congress is clarifying, rather than changing, the law." *Id.* at 691. And I may examine the history leading up to the amendment, including any longstanding policy or understanding of the law and any "aberrational" decisions that may have prompted Congress to act. *Id.* at 689-91.

---

retroactively abolished? Simply stating that a congressional enactment can nullify circuit precedent does not answer the question of whether the 2018 amendments did that.

Here, Congress did not state whether it was clarifying the law or enacting a new law, so I have no clue from the statutory language.  There was a circuit split, which supports a finding that the CAA was meant to clarify the law, not enact a new one.  But that begs the question of what Congress clarified.  If you assume, as defendants do, that Congress agreed with the Secretary, then it clarified that the 2011 regulations never had a statutory basis.  But as I have already discussed, the record does not support this assumption.  To the contrary, at least some members of Congress were displeased with the Secretary's December 2017 notice of proposed rulemaking that sought to rescind the 2011 regulations, and questioned why the Secretary felt he was bound by the *Marlow* decision.  It is just as likely that Congress disagreed with the Secretary but wanted to clarify that the tip pooling rules should apply, and always had applied, to all employers regardless of whether they take a tip credit.

This second interpretation is supported by the history leading up to the CAA's enactment.  When DOL promulgated the 2011 regulations, it expressed its view that Congress intended as far back as 1974 "that section 3(m) provides the only permitted uses of an employee's tips—through a tip credit or a valid tip pool among only those employees who customarily and regularly receive tips." *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18832-01 at 18841 (April 5, 2011).  DOL also stated that "[t]his has been the Department's longstanding position since the 1974 amendments.  The Department has also taken the position since the 1974 amendments that these protections against the use of an employee's tips apply irrespective of whether the employer has elected the tip credit." *Id.*  DOL then explained the legislative background that supported its view. *Id.*

DOL's "longstanding position" remained unchanged by DOL and without contrary action from Congress for over six years, until the Secretary's December 2017 notice of proposed

rulemaking, which sought to rescind the 2011 regulations. It was the potential change in that

longstanding position that prompted Congress to act.[13] And when Congress responded, it

enacted a statutory provision that was largely consistent with the 2011 regulations. This history

suggests that *Marlow* and the Secretary's position were aberrations from longstanding legal

understandings that prompted congressional action. *See ABKCO Music, Inc.*, 217 F.3d at 689-91.

Thus, to the extent the 2018 amendments could be deemed clarifying, they clarify that the

FLSA's tip pooling rules always applied to all employers regardless of whether they took a tip

credit.

### 2. *Whether ORLA's Reasoning Has Been Undermined*

The defendants argue that even if the 2018 amendments did not invalidate the 2011

regulations, the *ORLA* decision is based on deference to DOL, and DOL has since acknowledged

it had no authority to issue the 2011 regulations. The plaintiffs respond that DOL's non-

enforcement policy is irrelevant because *ORLA* allows their claims to proceed. They also note

that DOL has never completed a withdrawal or rescission of the 2011 regulations through the

method required under the Administrative Procedures Act, which would require notice,

comment, proposed rulemaking, and a final rule publication. They contend an agency cannot

rescind a regulation by announcing that it will no longer enforce the regulation or that it believes

it had no authority to issue the regulation. They thus contend the regulation is still enforceable

and is entitled to *Chevron* deference.

I agree with the plaintiffs. *ORLA* is binding authority on this court until the Ninth Circuit

or the Supreme Court overrules it. *See Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir.

---

[13] See video of the hearing at 1:15-50, where a congressional representative states that the
Secretary is "siding with the Tenth Circuit and taking our entire policy in a different direction."

1981) ("District courts are bound by the law of their own circuit."); 28 U.S.C. § 41.  The fact that

the agency has changed its opinion does not mean that I am free to ignore binding Ninth Circuit

law.

### 3. When Did the 2011 Regulations Take Effect in the Ninth Circuit?

The defendants argue that the 2011 regulations were meant to overturn *Cumbie*, and

when an agency attempts to overcome a judicial decision regarding a statute's meaning, the

agency's new interpretation can be applied only to conduct occurring after that court adopts the

new agency interpretation.  The defendants contend that *ORLA* did not become final until the

mandate was issued in June 2018, after the March 2018 amendments went into effect.

Consequently, they argue, the 2011 regulations never applied to the defendants' conduct in the

Ninth Circuit.  The plaintiffs respond that the Ninth Circuit case on which the defendants rely as

to when *ORLA* became final is distinguishable.

Where an agency interpretation purports to overcome a circuit interpretation of a statute,

that new interpretation does not become law in the relevant circuit until adopted by that circuit.

*See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 532-33 (9th Cir. 2012) (en banc) (Gould, J.

concurring) (stating that an agency's interpretation that conflicts with prior circuit precedent

"does not become binding in this circuit until we defer to that interpretation."); *Gutierrez-*

*Brizuela v. Lynch*, 834 F.3d 1142, 1147 (10th Cir. 2016) ("Normally, people are entitled to rely

on judicial precedents as definitive interpretations of what the law is so long as those precedents

remain on the books.").  The 2011 regulations were specifically aimed at overcoming *Cumbie*'s

ruling. *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18832-

01 at 18841 (April 5, 2011) ("The Department respectfully believes that [*Cumbie*] was

incorrectly decided.").  The 2011 regulations thus were not effective in the Ninth Circuit until the

*ORLA* court deferred to DOL's interpretation that the FLSA was silent on employers who did not take a tip credit and that the 2011 regulations were a permissible gap filler.

The defendants argue that until the mandate issued in *ORLA*, employers in the Ninth Circuit were entitled to rely on *Cumbie*. While the defendants are correct that a Ninth Circuit decision technically does not become final until the mandate issues,[14] that does not mean that employers and lower courts were free to ignore *ORLA* until the mandate issued in June 2018. To the contrary, a published Ninth Circuit decision "constitutes binding authority which must be followed unless and until overruled by a body competent to do so." *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (quoting *Gonzalez v. Ariz.*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)); *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority.").

The Ninth Circuit issued *ORLA* on February 23, 2016. Thus, as of that date, *ORLA* was the law of the land in the Ninth Circuit, subject to reversal only by the Ninth Circuit or the Supreme Court. If there had been a case pending in this court after that date and the employer-defendant filed a motion to dismiss, I would have been required to follow *ORLA* as binding Ninth Circuit authority regardless of the fact that the mandate had not yet issued. Maybe the Ninth Circuit or the Supreme Court would have modified or overturned the decision on further

---

[14] *See Carver v. Lehman*, 558 F.3d 869, 879 n.16 (9th Cir. 2009) (stating that "no expectation of finality can attach during the period in which either party may petition for rehearing" and "until the mandate issues, an opinion is not fixed as settled Ninth Circuit law, and reliance on the opinion is a gamble") (quotations omitted); *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529 (9th Cir. 1989) ("An appellate court's decision is not final until its mandate issues.") (quotation omitted).

review or maybe they would have affirmed it in its entirety. But either way, *ORLA* was binding

authority in this circuit in the meantime, and employers in the Ninth Circuit proceeded at their

own risk in acting contrary to the 2011 regulations in light of *ORLA* as of February 23, 2016.[15]

### 4. *Application to Norsoph, Carter, and Jaffee*

Under this analysis, I must grant defendant Riverside's motion for judgment on the

pleadings in the *Norsoph* case. It is undisputed that Norsoph stopped working at Riverside in

2012. Thus, during the course of Norsoph's employment, Riverside was entitled to rely on

*Cumbie* because the Ninth Circuit did not say otherwise until February 2016. I do not grant

Norsoph leave to amend because it would be futile. No amendment will change the fact that

throughout the time Norsoph was employed, the employer was entitled to rely on *Cumbie*'s

ruling that an employer who did not take a tip credit could require its employees to pool tips with

non-customarily tipped employees without running afoul of the FLSA.

However, for *Carter* and *Jaffee*, there was a period of time running from February 23,

2016 until March 23, 2018 when *ORLA* and the 2011 regulations controlled, so the defendants

were no longer entitled to rely on *Cumbie* and proceeded at their own risk in not following the

2011 regulations.

### 5. *No Private Right of Action*

The defendants argue that prior to the 2018 amendments, there was no private right of

action for unpaid tips or tip pool violations because the FLSA provided a private cause of action

---

[15] In reply, the defendants raise a new argument that because *Cumbie* and *ORLA* conflict, I
should apply the first-in-time rule and follow *Cumbie*. I do not consider issues raised for the first
time in a reply brief. *See Vazquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("[W]e do
not consider issues raised for the first time in reply briefs."). But even if I did, *ORLA* does not
state that it conflicts with *Cumbie*. Instead, it interprets *Cumbie* as being based on the statute's
silence (and thus leaving a gap for DOL to fill) rather than *Cumbie* being a statement of the
statute's unambiguous meaning.

only for the failure to pay overtime or minimum wages. The defendants argue that because they paid a cash minimum wage, the plaintiffs have no claim for a minimum wage violation. They note that DOL has consistently taken the position that prior to the 2018 amendments, employees had no cause of action for a tip claim under § 203(m) without a minimum wage violation.

The plaintiffs respond that the defendants paid less than the minimum wage because the defendants funded their employees' minimum wages through the employees' tips instead of from their own funds in violation of DOL's anti-kickback and free and clear regulation in 29 C.F.R. § 531.35. They argue that to the extent an employee must turn over his tips to the employer, that amount must be subtracted from the wage paid to him to determine if the employer has met the minimum wage. They also argue that the 2018 amendments show that Congress intended for this type of tip pooling to be prohibited under the FLSA all along.

Prior to the 2018 amendments, § 216(b) of the FLSA provided:

> Any employer who violates the provisions of section 206 [minimum wage] or section 207 [overtime] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Courts and DOL read this provision to preclude a private cause of action unless there was a minimum wage or overtime violation because the damages were measured by the amount of unpaid minimum wage or overtime. *See, e.g.*, *Trejo v. Ryman Hosp. Prop., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (holding the plaintiffs in that case had no private right of action because they did not allege a minimum wage violation); *Malivuk v. Ameripark, LLC*, 694 F. App'x 705, 708-09 (11th Cir. 2017) ("As the DOL puts it, because plaintiff is not pursuing minimum wage claims or overtime claims, but instead seeks only to collect improperly withheld tips, she does not have a cause of action under the FLSA.") (quotation omitted). I agree with this analysis.

The *Carter* and *Jaffee* plaintiffs have not plausibly alleged a minimum wage violation as their FLSA claims are currently pleaded. Their complaints do not allege facts showing a minimum wage violation and instead refer only to confiscated tips. For example, the *Carter* amended complaint alleges as damages "an amount representing the difference between the Tipped Employees['] earned tips that should have been retained by Plaintiffs . . . and the amount actually received after the unlawful tip pooling and tip confiscation practices of Defendant were implemented." *Carter*, ECF No. 9 at 12. The *Carter* amended complaint does not allege how much the employees were paid as an hourly wage (whether the minimum wage or a higher amount) or how the tip pooling dropped their wages below the minimum wage. Instead, they allege only a freestanding tip violation, which was not actionable under the FLSA prior to the 2018 amendments. The *Jaffee* complaint contains similar allegations and likewise does not plausibly allege a minimum wage violation. *Jaffee*, ECF No. 1-2.

However, the *Carter* and *Jaffee* plaintiffs may be able to amend to plausibly state a minimum wage violation if they have facts showing how the tip pooling dropped their alleged hourly wage below the minimum wage. The defendants argue that the plaintiffs can never allege a minimum wage violation because *Cumbie* already rejected the same argument as the plaintiffs make here: that by taking the employee's tips, the employer in effect took a tip credit and subsidized its payment of the minimum wage out of the employee's own property, her tips. *Cumbie* stated that the plaintiff's argument depended on the employees owning the tips, but under *Williams* employees own the tips only if there is no contrary arrangement with the employer. *Cumbie* held that the "FLSA does not restrict tip pooling when no tip credit is taken," so "only the tips redistributed to Cumbie from the pool ever belonged to her, and her

contributions to the pool did not, and could not, reduce her wages below the statutory minimum." 596 F.3d at 582.

However, following *Cumbie*, DOL issued the 2011 regulations, which state that tips belong to the employee. 29 C.F.R. § 531.52 ("Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA"). DOL regulations also contain a "free and clear" and anti-kickback section that provides:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35. DOL interpreted its free and clear and anti-kickback regulation as precluding the employer from requiring its employees to turn over their property (the tips) to work for the employer, who would then use those tips to meet its minimum wage obligations. *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18832-01, 18839 (April 5, 2011) ("Since the amount of tips the employee receives in excess of the allowable tip credit are (sic) not considered 'wages' paid by the employer, any deductions by the employer from the employee's tips would result in a violation of the employer's minimum wage obligation because the employer has only paid the employee the minimum wage (cash wage of $2.13 plus the tip credit up to

$7.25). A deduction from the employee's tips would be subtracted from the $7.25 minimum wage payment and would bring the employee below the minimum wage.").

Thus, like the example in § 531.35 of the employee who is required to use his own funds to buy tools, the plaintiffs here could allege that they are required to use their own funds (their tips) to buy into an employer-mandated tip pool. They also could allege that, when considered in relation to their hourly wage,[16] the amount of their own funds that they are required to pay into the tip pool cuts into the minimum wage and thus results in a violation of the FLSA's minimum wage requirement. *See Allison v. Dolich*, No. 3:14-CV-1005-AC, 2016 WL 5539587, at *7 (D. Or. Sept. 28, 2016) ("When Defendants issued paychecks, they paid all relevant employees a[n] hourly wage in excess of the federal minimum wage. However, to receive that wage, customarily tipped employees essentially had to withdraw tips previously deposited in their bank accounts and give such funds to back-of-house staff or managers for the ultimate benefit of Defendants. These payments, just as a payment to a third-party to purchase one's work uniform, served to decrease the hourly wage paid by Defendants to the customarily tipped employees. To the extent these payments decreased the effective hourly wage to a rate below the federal minimum wage, Defendants violated the minimum wage provisions of the Act.").

I therefore grant the *Carter* and *Jaffee* plaintiffs leave to amend to allege minimum wage violations if facts exist to do so because amendment would not be futile. Amendment would not be futile because the 2018 amendments to the FLSA do not evince a clear intent by Congress to have retroactive effect, so the presumption against retroactivity applies. Under *ORLA*, which is still good law in this circuit, the 2011 regulations are valid and enforceable. Under those

---

[16] The plaintiffs allege they are paid an hourly wage without specifying whether that hourly wage is the minimum wage or exceeds it and if it exceeds it, by how much.

regulations, tips belong to employees and could be used only for the tip credit or in a valid tip

pool with customarily tipped employees.  The plaintiffs could plausibly allege the defendants

violated that regulation by making them share tips, which are their property, with non-

customarily tipped employees including management.  If the plaintiffs can allege that the tips

they were required to contribute cut into the minimum wage, they plausibly can allege a violation

of the FLSA.

### B.  Claims Based on § 203(m)(2)(B) Post-2018 Amendment

The *Carter* and *Jaffee* plaintiffs argue that even if their pre-2018 amendment claims are

dismissed, they still can pursue their claims after the CAA's enactment because they allege

Wynn required them to share tips with management, which violates the newly enacted

§ 203(m)(2)(B) regardless of whether Wynn takes a tip credit.

Because the *Carter* case was filed before the 2018 amendments, it does not expressly

allege a claim under § 203(m)(2)(B).  But it alleges facts that would make out a claim under that

section if Wynn's alleged practices continued after the 2018 amendments.  It is unclear from the

*Carter* complaint whether that is the case, given that it was filed in 2016.  *Jaffee* was filed after

the 2018 amendments, so viewing the allegations in the light most favorable to the *Jaffee*

plaintiffs, they allege violations after the 2018 amendments.  The *Jaffee* defendant concedes in

its reply that a "technical" reading of the *Jaffee* complaint would allow for the claims to proceed

under the 2018 amendments. *Jaffee*, ECF No. 32 at 9.

As discussed above, the *Carter* and *Jaffee* plaintiffs must amend if they want to pursue

pre-2018 amendment claims.  Additionally, the *Carter* plaintiffs must amend if they want to

pursue violations following the 2018 amendments.  If the plaintiffs choose to amend, they should

make clear in the amended complaints that they are pursuing claims both before and after the

2018 amendments if that is what they are alleging. If the *Jaffee* plaintiffs choose not to amend, that case will proceed on a post-2018 amendment FLSA claim only.

### C. CBA Exhaustion

In *Jaffee*, the defendant argues the plaintiffs were required to exhaust their remedies under the CBA. The plaintiffs respond they were not required to exhaust because they are not alleging a violation of the CBA, they are alleging a violation of their statutory rights under the FLSA. In reply, the defendant concedes that if a claim is based on statutory rights, it need not be exhausted. But it argues that rule is limited to statutes "designed to provide minimum substantive guarantees to individual workers." *Jaffee*, ECF No. 32 at 10. The defendant argues the new statute does not impose a minimum requirement on employers, it just regulates who can participate in a tip pool. The defendant contends that because it otherwise pays a cash minimum wage, the plaintiffs do not allege a violation of a statutorily-based minimum guarantee and thus had to exhaust their remedies under the CBA.

If a plaintiff's claim is based on rights arising from a CBA, then "the plaintiff is required to exhaust remedies created by the agreement." *Collins v. Lobdell*, 188 F.3d 1124, 1127 (9th Cir. 1999). "However, if the claim arises from statutory rights, the plaintiff is not required to exhaust agreement remedies, . . . because statutory rights under the FLSA are guarantees to individual workers that may not be waived through collective bargaining." *Id.* (internal citation and quotation omitted). "FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement," so "exhaustion of remedies provided for in a collective bargaining agreement is not required even where a claim based on statutory rights also presents a claim under the agreement." *Id.* (quotation omitted). "However, a claim couched as a statutory

claim is still subject to exhaustion requirements if the claim is in reality essentially on the contract." *Id.* (quotation omitted).

The defendant acknowledges that an FLSA claim generally does not require exhaustion under a CBA. But it relies on the following language in *Barrentine v. Arkansas-Best Freight System, Inc.*: "While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." 450 U.S. 728, 737 (1981). The defendant argues that § 203(m) does not provide a minimum substantive guarantee, it just regulates who may participate in a tip pool.

I disagree. First, if the *Jaffee* plaintiffs can amend to allege a pre-2018 amendment minimum wage violation, then they will have invoked the FLSA's minimum wage guarantee. Second, the newly enacted § 203(m)(2)(B) provides a minimum guarantee by precluding employers from keeping employees' tips, including by sharing with management, regardless of whether the employer takes a tip credit. The plaintiffs' FLSA claim is thus grounded in the statute's protections, not the CBA. The *Jaffee* plaintiffs therefore were not required to exhaust, so I deny the defendant's motion as to the FLSA claim.

The parties did not adequately address whether the plaintiffs should have exhausted their state law claims for conversion and unjust enrichment. The parties appear to agree that to the extent those claims depend on the federal claim, they need not be exhausted.[17] But to the extent

---

[17] The defendant argues that if I dismiss the FLSA claim, I should either dismiss the state law claims as contingent on the FLSA claim or decline supplemental jurisdiction over the state law claims. Because at least a portion of the FLSA claim remains for the post-2018 amendment violation, I will exercise supplemental jurisdiction over the state law claims at this point.

the *Jaffee* plaintiffs are contending their state law claims would entitle them to recover all of their tips in the pre-2018 amendment period (as opposed to only that portion that constitutes a minimum wage violation), then they were required to exhaust under the CBA. The CBA allowed Wynn to pool tips. ECF No. 21-1 at 4. Determining whether Wynn converted the employees' property or was unjustly enriched outside the FLSA's protections thus would require interpretation of the CBA. Consequently, I grant the defendant's motion on the state law claims to the extent those claims meant to allege conversion or unjust enrichment prior to the 2018 amendments for all tips, as opposed to only those tips that would constitute a minimum wage violation under the FLSA.

## IV. CONCLUSION

I THEREFORE ORDER that in the *Norsoph* case, the defendants' motion for judgment on the pleadings **(2:13-cv-00580-APG-EJY, ECF No. 88) is GRANTED**. The clerk of court is instructed to enter judgment in favor of the defendants and against plaintiff Robert Norsoph, and to close case number 2:13-cv-00580-APG-EJY.

I FURTHER ORDER that in the *Carter* case, defendant Wynn Las Vegas, LLC's motion for judgment on the pleadings **(2:16-cv-02697-APG-DJA, ECF No. 24) is GRANTED in part**. The plaintiffs' claims are dismissed, but the plaintiffs may file an amended complaint by March 13, 2020. If they fail to do so, I will dismiss the case with prejudice.

I FURTHER ORDER that in the *Jaffee* case, defendant Wynn Las Vegas, LLC's motion to dismiss **(2:19-cv-00644-APG-NJK, ECF No. 21) is GRANTED in part** as more fully set forth in this order. The plaintiffs may file an amended complaint by March 13, 2020. If they do

/ / / /

/ / / /

not, the case will proceed on the post-2018 amendments FLSA claim and state law conversion and unjust enrichment claims.

DATED this 11th day of February, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE